Wilkins, Douglas H., J.
At issue is whether the plaintiff, a registered sex offender, may obtain judicial review of a decision denying his request to the defendant, Sex Offender Registry Board (“SORB”) for reclassification pursuant to 803 Code Mass. Regs. §1.37C(2). Relying on the allegations contained in the plaintiffs complaint, the SORB has moved to dismiss this case under Mass.R.Civ.P. 12(b)(1) on the ground that the Court lacks subject matter jurisdiction under G.L.c. 30A, §14. The plaintiff has opposed the motion. After hearing and review of the parties’ written submissions, the motion to dismiss is DENIED.
BACKGROUND Alleged Facts
The plaintiff is a sex offender who resides in Massachusetts. At some point, after being convicted of disseminating pornographic materials in 2000, the plaintiff was finally classified.
Nine or ten years later, in 2010, the plaintiff filed a Motion for Reclassification pursuant to 803 Code Mass. Regs. §1.37C(2). On September 22, 2010, the SORB denied the Motion for Reclassification. The plaintiff alleges that the SORB’s action was arbitrary and capricious, the decision reflected improper influence of those who prosecuted him criminally in 2000 and the SORB was prejudiced against him despite the unique facts of the case.
Statutoiy and Regulatory Framework
The Supreme Judicial Court has summarized the current initial registration and classification requirements for sex offenders as follows:
The 1999 statute provides that a person convicted of any of the enumerated sex offenses on or after August 1, 1981, or released on or after August 1, 1981, from confinement, parole, or probation supervision following a conviction of one of these offenses, is a “[s]ex offender.” G.L.c.6,§178C...A sex offender who lives or works in the Commonwealth must register with the board by mail, listing his name, home address, and (if applicable) work address, or his intended home and work addresses. §178E(a)-(c), 178E(g)-(h), 178E(1). He must verify this information annually and report any changes to the board. §§178F, 178F1/2 . . .
The 1999 statute provides for postregistration hearings and mandates the order of priority in which offenders are to be reviewed. G.L.c. 6, §§178K{3), 178L. The board is to promulgate guidelines for classifying an offender’s level of dangerousness and risk of reoffense and apply those guidelines to assess the risk level of particular offenders. §178K(1). The board may determine that an offender does not pose a danger or risk of reoffense and relieve him of any further registration requirement. § 178K(2)(d). Once an offender receives notice from the board of its initial recommended classification, he can request an evidentiary hearing to determine his future duty to register and his final classification. § 178L. The board then assigns a final risk classification level: level one (low); level two (moderate); or level three (high). §§178K(2), 178L(2). Offenders may seek judicial review pursuant to G.L.c. 30A, §14, of the board’s final classification and registration requirements. §178M.
Prior to final classification by the board, information concerning offenders is not available to the public, but only to law enforcement agencies. G.L.c. 6, §§1781, 178J(c); 178K(2)(a)-(c). Public notification depends on an offender’s classification level. §178K(2)(a)-(c). Persons classified as level two and level three offenders must register each year in person at their local police station, and their registry information is available on request to members of the public over eighteen years of age who state that they are requesting such information for their own protection or for the protection of another person for whom they have responsibility. §§178Fl/2, 1781, 178J, 178K(2)(b)-(c). Information regarding level three offenders will be disseminated through active community notification. §178K(2)(c).
A person classified as a level one offender must continue to register annually by mail. G.L.c. 6, § 178F. As long as his classification remains at level one, an offender’s registry information is available only to law enforcement agencies, not to any member of the public. §178K(2)(a).
*160 The board must maintain a central computerized registry of sex offenders. G.L.c. 6, §178D. The file on each offender contains the offender’s registration data . . . The board must “promptly” transmit such data to the Federal Bureau of Investigation (FBI) and to police departments in the municipalities where the offender intends to live and work, and the municipality where the offense occurred. §178E(a)-(c), 178E(g)-(j), 178EQ). (Footnotes omitted).
Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 756-57 (2006) (“Doe No. 1211”), quoting Roe v. Attorney Gen’l, 434 Mass. 418, 423-26 (2001).
The initial classification is not written in stone for all time, because an offender may move for reclassification at least three years after his initial classification pursuant to 803 Code Mass. Regs. §1.37C(2). The pertinent provisions of the SORB’s reclassification regulation prescribe the content of the motion for reclassification, as well as the evidence that must be submitted, which the SORB evaluates under the preponderance of the evidence standard:
(d) The motion shall set forth the offender’s full name, date of birth, address, sex offender number (SON), name and address of legal representative (if applicable), name and address of legal guardian (if applicable), the classification level sought, together with the reasons for seeking such determination. The motion shall include proof, by a Preponderance of the Evidence, that the sex offender:
1. has, since release from incarceration, remained at liberty for more than five continuous years; and
2. has not committed or been convicted of a sex offense since either accepting the Board’s recommended classification or since his classification hearing. The term conviction as used in this reclassification process shall include an adult conviction or an adjudication as a youthful offender or as a delinquent juvenile by reason of a crime as well as any admission to sufficient facts as to warrant a guilty finding.
The standards that the SORB must apply in deciding a motion for reclassification appear in 803 Code Mass. Regs. §1.37C(2)(g):
(e) In addition, the sex offender’s motion for reclassification shall also provide proof, by a Preponderance of the Evidence, that his risk of reoffense and the degree of dangerousness he poses to the public has been reduced through new and updated information on the following Factors for classification found at 803 Code Mass. Regs. 1.40:
1. his response to or completion of sex offender treatment (Factors 11, 14, 18, 24);
2. current home situation (Factor 12);
3. physical condition (Factor 13);
4. any new psychological or psychiatric profiles indicating his risk to reoffend (Factors 1, 15);
5. absence of alcohol and drug abuse while at liberty (Factor 16);
6. recent behavior (Factors 22);
7. updated victim impact statement (Factor 23); and
8. new or updated materials submitted by the sex offender (Factor 22).
The regulation reiterates the applicable standards for classification and disclaims a right to hearing. In particular, 803 Code Mass. Regs. §1.37(2)(e), reads in relevant part:
g) . . . Within a reasonable time after Receipt of any response or additional information from the offender, the Full Board shall meet to determine whether the offender has provided proof, by a Preponderance of the Evidence, that his risk of reoffense and the degree of dangerousness he poses to the public has been reduced. The Full Board shall decide the motion on the materials submitted and shall not schedule a hearing on the motion. If a majority of the Full Board approves the motion, the sex offender shall be notified of his new classification level and the offender shall be required to comply with registration requirements as indicated in 803 Code Mass. Regs. 1.28 through 1.30. In addition, the Board shall update the information pertaining to him in the sex offender registry and notify law enforcement in accordance with 803 Code Mass. Regs. 1.27.
DISCUSSION
The Superior Court has jurisdiction to review the “final decision of any agency in an adjudicatory proceeding . . .” G.L.c. 30A, §14. An “adjudicatory proceeding” is:
a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing.
G.L.c. 30A, §1(1). Neither party suggests that there is a statutory right to an agency hearing. Indeed, the redetermination process is purely a creature of regulation, not statute. The regulation prohibits hearings. 803 Code Mass. Regs. §1.37(2)(g). Nevertheless, the SORB cannot, by regulation, prohibit an adjudicatory proceeding required by a statute, such as G.L.c. 30A, §1(1). See generally Arlington Hous. Auth. v. Secretary of Communities & Dev., 409 Mass. 354 (1991) (regulation conflicted with statute).[1]
That leaves the question whether the plaintiff had a “constitutional right” to an agency hearing for purposes of G.L.c. 30A, §1(1). The issue is not an easy one. It includes considering the constitutional *161 requirement, if any, for a redetermination in the first place.
The Supreme Judicial Court has addressed the constitutional ramifications of sex offender registration in the context of the SORB’s initial classification. In Doe v. Attorney Gen., 426 Mass. 136, 144 (1997), it held that a person convicted of the lowest level sex offense had a procedural due process right to an initial hearing and determination whether he had to register as a sex offender and, if so, what level applied to him for the following reasons:
The combination of the following circumstances persuades us that the plaintiff has a liberty and privacy interest protected by the Constitution of the Commonwealth that entitles him to procedural due process: (1) the requirement that he register with local police; (2) the disclosure of accumulated personal information on reque'st; (3) the possible harm to his earning capacity; (4) the harm to his reputation; and most important, (5) the statutory branding of him as public danger, a sex offender. That statutory classification implicitly announces that, in the eyes of the State, the plaintiff presents a risk of committing a sex offense.
Notably, the Court found the original statute constitutionally deficient despite former G.L.c. 6, §178G, which allowed a sex offender to apply to be relieved of the obligation to register, but only more than fifteen years after conviction. Doe, 426 Mass. at 145. The Court held:
As to the public disclosure on request ... of sex offender information, it is contrary to the principie of fundamental fairness that underlies the concept of due process of law to deny the plaintiff a hearing at which the evidence might show that he is not a threat to children and other vulnerable persons whom the act seeks to protect and that disclosure is not needed when balanced against the public need to which the sex offender act responded. Government action unreasonably stigmatizing the plaintiff would violate the plaintiffs constitutionally protected rights. The plaintiff is entitled to a hearing and a determination as to whether he must register under the act and, if so, whether sex offender information concerning him should be available on request.
Id. at 146.
The Legislature then amended the statute in 1999 to meet due process requirements for initial classification in light of the liberty and privacy interest identified by the Supreme Judicial Court. See St. 1999, c. 74, §2. Considering the Court’s emphasis upon allowing public disclosure on request only when the government shows a need for protection, as well as the inadequacy of allowing review fifteen years after conviction, I do not accept the SORB’s argument that the redetermination process in 803 Code Mass. Regs. § 137C(2) is merely a matter of grace or administrative discretion. If an individual ceases to be a threat, the government has no ongoing justification for future disclosure of information resulting in stigmatization, for such dissemination would serve no public purpose. Yet, the same five considerations that led the Supreme Judicial Court to require an initial hearing are still present when the sex offender seeks redetermination, mitigated only by fact that the initial hearing three or more years earlier may have reduced the risk of erroneous classification upon redetermination.
If a sex offender’s dangerousness remained constant over time, the initial hearing would no doubt be sufficient. But that is not the case. Both case law and regulations establish that time may erode or eliminate the Commonwealth’s interests in disclosure. The SORB’s regulations acknowledge that “the risk to reoffend and the degree of dangerousness posed by a sex offender may increase or decrease over time.” §803 Code Mass. Regs. 1.37(1). See 803 Code Mass. Regs. §1.40, factors 9(a), 22, 24. In fact, courts and SORB hearing examiners frequently cite the redetermination provision—often in borderline cases—in upholding decisions that find a higher level of classification than may be appropriate three years later. See Doe, Sex Offender Registry Bd. No. 115606 v. Sex Offender Registry Bd., 452 Mass. 784, 795 (2008); Doe No. 1211, 447 Mass. at 779, 790 n. 11; Doe, Sex Offender Registry Bd. v. Sex Offender Registry Bd., 74 Mass.App.Ct. 1129 (2009); Doe v. Sex Offender Registry Bd., 68 Mass.App.Ct. 1113 and n.1 (2007); Doe v. Sex Offender Registry Bd., 2007 WL 798541 n.1 (Super.Ct. 2007); SORB Case No. 12925 v. Sex Offender Registry Bd v. Sex Offender Registry Bd., 2006 WL 446041 (Super.Ct. 2006) [21 Mass. L. Rptr. 481]. Redetermination based upon new information in the circumstances recognized by SORB’s regulations and the case law provides the sole mechanism for protection of constitutionally based rights where the passage of time has reduced the risk of dangerousness.[2]
Given the interests at stake and the potential for change over time, it stands to reason that, once classified, a registered sex offender has a liberty and privacy interest in obtaining a lower classification some years after the initial classification, if the facts warrant. Otherwise, even if he is no longer properly classified at his original level, he would be subject to the same stigmatizing disclosures and harms to his economic and reputational interests, while being branded a sex offender even though the state no longer had a legitimate interest in doing so. As the above discussion shows, the possibility is not far-fetched. Disclosure, if continued after the danger has passed, crosses the line that separates permissible regulation in the interest of public protection from impermissible punishment without the protections of the criminal *162 system. See Doe, 426 Mass. at 146-48 (Fried, J., concurring).
If due process requires any type of hearing affecting a specifically named person, then G.L.c. 30A, §1(1) requires the SORB to conduct an “adjudicatory proceeding” in accordance with G.L.c. 30A, §§10, 11. Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 98-99 (1998). The absence of separate statutory or regulatory authority for a hearing makes no difference. Id. at 99 and cases cited; General Chem. Corp. v. Department of Envtl. Quality Eng’g., 19 Mass.App.Ct. 287, 293, further review denied, 394 Mass. 1103 (1985) (requiring an adjudicatory hearing before DEQE released records alleged to be trade secrets protected by G.L.c. 21C, §12), and cases cited. See also Madera v. Secretary of the Executive Office of Communities & Dev., 418 Mass. 452, 462-63 (1994). As applied to redeterminations, however, this principle will not necessarily lead to a flood of new evidentiary hearings. See id. at 463-64. Where facts are not in dispute—which may often may be the case in a redetermination—a full adjudicatory hearing with live evidence may not be required as long as the agency allows a sufficient opportunity for the losing party to present its factual case (for instance, by proceedings akin to summary judgment). Cf. 310 Code Mass. Regs. 1.01(11)(d)-(f); Lotto v. Commonwealth, 369 Mass. 775, 780 (1976); Mead, Petitioner, 372 Mass. 253, cert. denied, 434 U.S. 858 (1977); Massachusetts Outdoor Advertising Council v. Outdoor Advertising Bd., 9 Mass.App.Ct. 775, 783-92 (1980).
It is true that, “to the extent the agency or other entity responsible for [the decision] possesses discretion to decide whether to grant or withhold [relief], it becomes less likely that potential [applicants] will be found to have a constitutionally protected property interest.” Madera, 418 Mass. at 459. The SORB’s primary argument, in fact, emphasizes that its redetermination process is discretionary. That is certainly true to a point, but there are also clear limits on the SORB’s discretion. By regulation, an administrative agency may limit discretion it otherwise has. See Restaurant Consultants, Inc. v. Alcoholic Beverages Control Com’n, 401 Mass. 167, 170, n.7 (1987).
The SORB’s regulations establish a clear standard for redetermination: “that his risk of reoffense and the degree of dangerousness he poses to the public has been reduced.” 803 Code Mass. Regs. §1.37C(2)(e). The standard speaks to the requirement, expressed in connection with the original determination, to be sure, “that a public agency must have some evidence of an offender’s future dangerousness, likelihood of reoffense, or threat to the community, to justify disclosure to the public in a given case. This statutory limit ensures that disclosure occurs to prevent future harm, not to punish past offenses.” Doe, 426 Mass. at 142, quoting State v. Ward, 123 Wash.2d 488, 503 (1994). The SORB’s regulations also set forth specific evidence to be produced and mandate the “preponderance of the evidence” standard. 803 Code Mass. Regs. §1.37C(2)(e). The SORB applies a legal standard to the facts in order to determine the rights of a specifically-named person to a lower classification. Given these constraints, the redetermination is not materially more or less discretionary than the initial determination, which does require a hearing under Doe, 426 Mass. at 146. Cf. Madera, 418 Mass. at 459-62 (finding that housing regulations were not so discretionary as to defeat a claimed property interest).[3]
The complaint shows enough to establish jurisdiction for judicial review under G.L.c. 30A, §14.[4]
ORDER
For the above reasons, the Defendant SORB’s Motion to Dismiss Pursuant to Mass.R.Civ.P. 12(b)(1) is DENIED. The SORB shall file the record of its proceedings pursuant to Standing Order 1-96 as amended within 60 days of this order.

Moreover, even a statutory limitation upon review must give way to constitutional demands, either through a constitutionally permissible construction or through invalidation. See Gurry v. Board of Pub. Accountancy, 394 Mass. 118, 129-30 (1985) (stating that a judicial stay would likely be available to consider allegations of due process violations notwithstanding a statutory prohibition upon such stays).

Redetermination may also serve the statutory purpose of warning the public of actual dangers, rather than recycling stale information. However, that purpose does not establish a protected interest of the plaintiff.

The SORB urges me to follow the principles articulated in Sierra Club v. Dep't of the Dept. of Envtl. Mgt., 439 Mass. 738, 746 (2003), but that case addresses the standard of review, rather than jurisdiction. The SORB also cites School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 577 (2007), which, while standing for the proposition that G.L.c. 30A, §14 does not grant jurisdiction to review a decision that did not occur in an adjudicatory process, turns upon the fact that the rights determined at the public hearing in that case were those of the applicant, charter school, not the plaintiff school committee. In this case, the plaintiff is the applicant. Neither case confronted an array of rights such as those articulated in the sex offender registration case law.

Even if review were not available under G.L.c. 30A, § 14, the plaintiff would likely have a right to judicial review in the nature of certiorari. G.L.c. 249, §4. “To obtain certiorari review of an administrative decision, one must show ‘(1) a judicial or quasi judicial proceeding; (2) a lack of all other reasonably adequate remedies; and (3) a substantial injury or injustice arising from the proceeding under review.’ ” Hudson, 448 Mass. at 576 (citations omitted). See Stefanick v. Planning Bd. of Uxbridge, 39 Mass.App.Ct. 418 (1995), rev. den., 422 Mass. 1104 (1996); Kitras v. Zoning Adm'r of Aquinnah, 453 Mass. 245, 256-57 and n. 19 (2009) (certiorari review of a district designation). I would be reluctant to dismiss this case outright in any event, if it could proceed under an amended complaint in the nature of certiorari.