Karen RYAN, Plaintiff,

v.

FALLON COMMUNITY HEALTH
PLAN, INC., Defendant.

Civil Action No. 94–40182–NMG.

United States District Court,
D. Massachusetts.

April 4, 1996.

Paul M. Stein, Framingham, MA, for plaintiff.

Thomas I. Elkind, Boston, MA, Daly D.E. Temchine, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff, Karen Ryan ("Ryan"), brought this action alleging two counts of breach of contract and one count for unfair and deceptive insurance practices in violation of M.G.L. c. 93A and 176D. Ryan's claims arise from the alleged refusal of defendant, Fallon Community Health Plan, Inc. ("Fallon"), to cover

the costs of plaintiff's emergency liver surgery and related care in November, 1990.

Pending before this Court is a motion by defendant to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted. Plaintiff opposes the motion to dismiss and has filed a motion to remand the action to state court. For the reasons stated below, plaintiff's motion to remand will be denied and defendant's motion to dismiss will be allowed.

## I. *FACTUAL BACKGROUND*

■ When considering a motion to dismiss, this Court accepts as true the well-pleaded factual allegations of the Complaint and draws all reasonable inferences in favor of the plaintiff. *Carreiro v. Rhodes Gill and Co., Ltd.,* 68 F.3d 1443, 1446 (1st Cir.1995). Plaintiff's Complaint asserts the following relevant factual allegations against the defendant, a licensed health maintenance organization ("HMO") under M.G.L. c. 176G:

1. In 1987, Fallon entered into a Group Service Agreement ("GSA") with Dunn & Company ("Dunn"), a Massachusetts corporation. By the terms of the GSA, Dunn employees who met the required eligibility criteria and paid the required premiums qualified for health benefits under Fallon Community Health Plan ("the Plan").

2. On or before October 31, 1990, Ryan, an employee of Dunn, submitted an application for membership in the Plan and paid the initial prepaid premium for enrollment. Dunn forwarded Ryan's application and prepaid premium to Fallon. Ryan alleges that she met all lawful criteria set forth for eligibility that was made known to her or to Dunn by Fallon.

3. On or about November 3, 1990, Ryan was rushed to the hospital where, two days later, she received an unexpected emergency liver transplant and other treatment. Ryan claims that her liver failure and hospitalization were completely unforeseen at the time she applied for Fallon membership.

4. On or about November 7, 1990, Fallon requested a Medical Records Release authorization and other information from Ryan.

Ryan forwarded the requested forms to Fallon approximately three days later.

5. Nearly one month passed before Fallon sent a letter informing Dunn that it was "rejecting" Ryan's application for membership in the Plan. Fallon found that Ryan did not meet the eligibility requirements for enrollment into the Plan and implied that Ryan made certain "misrepresentations" in her membership application.

6. On or about January 19, 1993, Ryan, through her attorney, wrote a letter to Fallon demanding relief for her medical bills which exceeded $175,000.

7. Fallon responded by a letter dated February 10, 1993, rejecting Ryan's demand and refusing to tender any settlement offer.

The plaintiff filed this Complaint in Superior Court of the Commonwealth of Massachusetts on October 27, 1994. Ryan claims that the grounds asserted by Fallon for "rejecting" her application were "arbitrary, capricious, unfairly discriminatory and otherwise without lawful right or authority." (Complaint, ¶ 18). The Complaint sets forth three counts:

1. Count I alleges that Fallon's "failure, refusal and neglect" to accept Ryan as a member was a willful breach of the GSA between Fallon and Ryan's employer, Dunn, because Ryan was a creditor beneficiary of that Agreement.

2. Count II alleges that Fallon's "failure, refusal and neglect" to pay for the costs of Ryan's hospital bills was a willful breach of its contract with Ryan.

3. Count III alleges that Fallon's actions constituted a knowing and willful commission of unfair and deceptive acts in violation of M.G.L. 176D, § 3 and M.G.L. 93A, §§ 2 and 9.

Fallon removed the case to this Court on November 16, 1994 on the ground that the plaintiff's claims related to an employee benefit plan regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

On that same day, Fallon filed the pending motion to dismiss plaintiff's Complaint on

several grounds, including preemption of plaintiff's state law claims by ERISA. Ryan opposes the motion to dismiss and has filed a motion to remand this action to state court on the ground that her state law claims are expressly "saved" from ERISA preemption and therefore this Court lacks subject matter jurisdiction over them. Because the two motions are interrelated, the Court considers them together.

## II. *LEGAL ANALYSIS*

Both parties agree that, for the purpose of these motions, the Plan at issue is an employee welfare plan that falls within the purview of ERISA. Section 3(1) of ERISA defines an ERISA Plan as one which was established or maintained by an employer "for the purpose of providing its participants or their beneficiaries ... medical, surgical or hospital care or benefits." 29 U.S.C. § 1002(1).

■ Defendant argues that all three counts of plaintiff's Complaint—two counts of breach of contract and one count for unfair and deceptive practices—are preempted by section 514(a) of ERISA, which supersedes "any and all State laws insofar as they ... relate to any employee benefit plan...." 29 U.S.C. § 1144(a). ERISA defines the term "State laws" to include "all laws, decisions, rules, regulations or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). The Supreme Court has established that a law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990).

Plaintiff counters that her claims are not preempted by ERISA but rather, are expressly "saved" from ERISA preemption. More specifically, plaintiff argues that her claims are based on the defendant's alleged violation of Massachusetts insurance laws and regulations so as to fall squarely within the purview of § 514(b)(2)(A) of ERISA, the "savings clause", which provides that "nothing in [ERISA] shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." 29 U.S.C. § 1114(b)(2)(A).

■ Alternatively, plaintiff argues that she has alleged state law claims of fraud arising from events which antedated and "induced" her enrollment in the Plan and, therefore, her claims do not sufficiently "relate to" the Plan to warrant ERISA preemption. This argument fails, however, because plaintiff has not pleaded any claims of fraud in her Complaint. Nor has she alleged any facts concerning any fraudulent communication or interaction between plaintiff and defendant prior to her submission of application materials that may have "induced" her to apply for Fallon membership.

■ The primary issue before this Court, then, is whether the state laws under which plaintiff has brought her claims "regulate insurance" within the meaning of the savings clause and are therefore saved from the effect of the general preemption clause of ERISA. In order to make that determination, the United States Supreme Court has formulated a two-part test. First, the court takes a "common-sense view" of the language of the savings clause to see if the state law in question regulates insurance. Second, the court considers the three criteria used to define the "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.*

1) whether the state law has the effect of transferring or spreading a policyholder's risk;

2) whether the state law is an integral part of the policy relationship between insurer and insured; and

3) whether the state law is limited to entities within the insurance industry.

*Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740–743, 105 S.Ct. 2380, 2389–2391, 85 L.Ed.2d 728 (1985). The Supreme Court further clarified its reasoning in *Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 48–50, 107 S.Ct. 1549, 1553–1554, 95 L.Ed.2d 39 (1987), by requiring that a state law be specifically directed toward the insurance industry in order to qualify as a state law regulating insurance under the savings clause.

■ Plaintiff's two common law claims for breach of contract clearly are not "saved" from ERISA preemption under this two-part

test. The Massachusetts law of breach of contract is not a law that "regulates insurance" under either a common sense view or the McCarran–Ferguson Act factors. The Court will therefore dismiss Counts I and II of plaintiff's Complaint.

That leaves plaintiff's statutory claim in Count III, alleging violations of M.G.L. c. 176D, §§ 3(1), 3(2) and 3(7), and M.G.L. c. 93A, §§ 2 and 9. This Court concludes that Count III must also be dismissed for the following three reasons:

■ 1. The Court is not convinced that plaintiff has a private right of action for violations of §§ 3(1), 3(2) or 3(7) of M.G.L. c. 176D. Chapter 176D, § 3, defines unfair or deceptive acts or practices in the insurance industry. Caselaw, however, indicates that no private right of action generally exists under Chapter 176D standing alone. *Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72, 75, 365 N.E.2d 802 (1977); *Mahaney v. John Hancock Mutual Life Ins. Co.*, 6 Mass.App. Ct. 920, 921, 380 N.E.2d 140 (1978); *Thorpe v. Mutual of Omaha Ins. Co.*, 984 F.2d 541, 544 (1st Cir.1993); *Pariseau v. Albany Int'l Corp.*, 822 F.Supp. 843, 845 (D.Mass.1993); *Best v. AGFA Compugraphic*, 1992 WL 390713 at *3 (D.Mass.1992). In 1979, the Massachusetts legislature rewrote M.G.L. c. 93A, which proscribes unfair and deceptive acts and practices in general, to provide a private right of action for a party whose rights have been affected by a violation of Chapter 176D, § 3(9). There is no similar provision providing an individual cause of action for a violation of any other clause of § 3 of Chapter 176D.

■ 2. Even if plaintiff did have a private right of action through Chapter 93A for defendant's alleged violations of Chapter 176D, her claim would not be saved from ERISA preemption. Not only has Chapter 176D itself been found not to fall within ERISA's savings clause, *see Best*, 1992 WL 390713 at *3, n. 2, but also Chapter 93A, under these circumstances, clearly is not a state statute which regulates insurance as defined by the Supreme Court's two-part test. This Court agrees with the reasoning in *Pariseau* that, even though Chapter 93A was rewritten to provide a private right of action for a viola-

tion of M.G.L. c. 176D, § 3(9), that statutory reworking did not affect the substantive terms of insurance contracts themselves.

> Rather, it simply subordinate[d] those terms to the performance standards found in Mass.Gen.L. ch. 176D. Under *Metropolitan Life*, this is not a sufficient effect on the substantive terms of the insurance contract here at issue to frustrate the national sweep of ERISA preemption and bring the case within the safe harbor of the ERISA savings clause....

822 F.Supp. at 846. Therefore, this Court concludes that any plausible 93A claim based upon a violation of Chapter 176D would be preempted by ERISA.

■ 3. The Court is unpersuaded by plaintiff's argument in her brief that Count III also alleges a violation of M.G.L. c. 176G, §§ 7, 8, 9, 14 and 16, and that that Chapter is the kind of "core insurance regulation which Congress expressly delegated to the states." This Court notes that plaintiff has failed to allege specifically a violation of Chapter 176G in her Complaint. At oral argument, plaintiff directed the Court to several paragraphs in the Complaint, none of which mentioned a violation of that Chapter, but nevertheless asked the Court to "infer" such an allegation.

■ Even if plaintiff sufficiently alleged a violation of Chapter 176G, this Court concludes that that statute does not regulate insurance within the meaning of the savings clause of ERISA. Chapter 176G is the state law which regulates HMOs and thus is specifically aimed at the HMO industry, not the general insurance industry as required by the *Pilot Life* decision. Although M.G.L. c. 176G, §§ 7, 8, 9, 14 and 16 may relate to and impact the insurance industry insofar as they require HMOs to comply with specific procedural practices, this Court concludes that those sections do not sufficiently affect the substantive terms of insurance contracts to warrant the "saving" of Count III from ERISA preemption.

Accordingly, the motion by plaintiff to remand this action to state court is DENIED and the related motion of defendant, Fallon Community Health Plan, Inc., to dismiss all

three counts of plaintiff's Complaint is ALLOWED.

So Ordered.